The next case today is Iona Conley et al. v. Roseland Residential Trust et al. Appeal number 20-1399. Attorney Forrest, please introduce yourself for the record and proceed with your argument. Good morning, Your Honors. And may it please the court, my name is Michael Forrest. I represent the appellants, the Connellys in this matter. Shortly, Your Honors, this is an appeal of three The first matter addressed by this appeal is whether or not the court erred in dismissing the Connellys' claims for water and sewer and gas submetering as part of the summary judgment decision. In addition, the appellants are challenging the dismissal at the motion to dismiss stage of the utility company or utility management company, RealPage Utility. And finally, the appellants are challenging the decision on certification wherein the court decided not to certify the metering classes in this action. The summary judgment in this action addresses the issue that no one and no entity is above the law. However, in the instant action since 2013, the appellees have been on actual notice that it is unlawful to submeter gas utility service in the Commonwealth of Massachusetts. However, regardless of notification in 2013, both defendants continue to notification. Appellants have brought this action seeking... When you say actual notification, what do you mean? Yes, Your Honor. In 2013, the Department of Public Health issued a notice to all the local boards of health indicating that they had come or become aware of the fact that these boards of health were issuing invalid variances for gas submetering. At that time, counsel for Rose and the defendant Roseland was made aware, and I do believe in the record and materials provided to the court, there are communications where there is a discussion as to actually the illegality of the process itself. Real Page and the defendant Roseland have communications, again, in the record where they discuss that the DTH and the DPU have forbidden the practice of gas submetering. However, the trial court concluded that regardless of the illegality of the continued submetering, there was no harm inflicted upon these consumers. The regulation and the statute... So the DPH told the locals, sent something to the locals saying this is impermissible, and then how did Roseland get notification? Yes, Your Honor. So what kind of notification was it, please? Of course, Your Honor. So to take a quick step back, the Department of Public Utilities has sole authority over the regulation of utilities in the Commonwealth. The Department of Utilities has made a declaration and decision. This goes back to as far as 1958, where its authority was confirmed by the Supreme Court, and post-1997, the Department issued a declaration that said no more gas submetering. We are trying to protect consumers here. We feel like this is an unregulated utility. So fast forward to 2013, the Department of Health incorporates the DPU's rule into the Sanitation Code to protect tenants at residential facilities. The DPH finds out in 2013 that regardless of the black letter law, landlords throughout the Commonwealth are still trying to get residential variances for this gas submetering, which at this point is illegal. Fast forward, the Roseland defendant here purports to have obtained a variance. That variance, the DPH has been very clear, was facially invalid. They never should have been Roseland of the DPH 2013 letter, which I do know is in the record, the 2000 Department of Health bulletin to all local boards of health. As a result of the receipt, I'm sorry, I'm just trying to just get a simple answer. Who did they get notice from? They got, they were provided notice that counsel for Roseland was provided a copy of the 2013 DPH letter. Counsel for Roseland? I am not sure, Your Honor, I'm trying to figure out, since they were granted this variance, did the local boards revoke the variance? Your Honor, none of the local boards of health seem to have acted with regard to this 2013 notification. In fact, this was in 2013. This suit was filed in 2018. Does the DPH have a mechanism for getting a variance overturned? Yes, Your Honor, there are regulatory provisions in place for valid variances. There is a variance procedure. However, does the DPH have a mechanism for overturning a local variance once granted? They do, Your Honor. And has it exercised that with respect to any of the variances granted to Roseland? No, the DPH has not taken an affirmative action despite the illegality. Have they taken a position? They have taken their position in the 2013 letter. At least in this action, there has been no indication that the DPH has taken any further corrective action or the Malden Board of Health has taken any corrective action. Therefore, these tenants continue to be billed for something that the regulation says is the financial responsibility of the landlord. And this is only one aspect of the sub-metering which is occurring at this facility unlawfully. The second type of sub-metering which is illegal is water and sewer sub-metering. Both a statute and regulation both point out that without full compliance of the procedure set forth therein, a landlord must pay for and supply water and sewer sub-metering. This question turns in part, presumably if they would like to have this stopped, there's nothing that prevents them. What is a tenant who doesn't want to bring a Chapter 93A claim but wants to overturn the variance? Is there any way a tenant can do that? Your Honor, I do not know if a tenant would have standing. We can look into that further, but I'm not sure if a tenant himself or herself would have standing to challenge a local variance. So the legal question issue here is how does Chapter 93A apply in a situation in which there is a local governmental action purporting to authorize the private actor's behavior that has never been overturned? Your Honor, I think the point of this the claim under 93A and 15B is that when the black-letter statewide law and regulation... I know, but none of the Chapter 93A cases you cite are cases in which the regulated actor who's being sued for the Chapter 93A violation is operating pursuant to a local governmental authorization to do so. Your Honor, I would suggest the appellants take the position that that authorization was facially invalid. I know what I'm saying. Do you have a case in which a Chapter 93A liability has been imposed in a circumstance in which the defendant was operating pursuant to local governmental authorization that was in place at the time? I do not, Your Honor. How do we know under Massachusetts state law how Chapter 93A is supposed to apply in that circumstance? Well, Your Honor, I would suggest the facially invalid nature of the variance itself. Because there is no due process or private property right in a variance, a facially invalid variance requires extra effort on behalf of the appellee here. In 2013, when they were told that they were doing something illegal, they had an opportunity to be heard before the Board of Health, before the DPU, or the DPH. They chose not to do anything. Rather than that, they unfairly and deceptively continued to submit or for over nine years. So I would suggest that 93A jurisprudence... Is there an administrative procedure available to the plaintiffs in this case? Your Honor, I do not, as I had mentioned to Justice Barron, I am not sure as to whether or not the individual tenant, as a residential tenant, would have standing to challenge the variance itself. In this action, there were... Wouldn't they have standing to challenge the method of billing? Yes, Your Honor. If you're saying it's illegal, why wouldn't there be an administrative challenge to the billing methodology? Your Honor, I do believe that 93A puts forth that a agreed consumer is not necessarily required to fulfill all administrative prerequisites prior to filing a claim for unfair and deceptive business practices. I apologize, I don't have the case offhand, but I know that 93A has been used in the past when there are issues with administrative agencies decisions. To Justice Barron's question, I don't have a case that overturns one, but I do know that when looking at the jurisprudence of 93A... Presumptively, the local boards must think that they have the authorization to issue these variances. In 2013, Your Honor, I can't speak to what the Board of Health believed in 2013 or prior to that. I do know that in 2013, the state made it clear to these boards of health that they are not permitted to issue these variances. We have learned that these variances save these facilities an awful lot of money. These variances allow them to forgo individualized meters in each unit to measure people's actual usage of gas and water. The second part of this claim isn't just about the variance, though, however, Your Honors. It's also about the fact that the billing itself was not charging the actual consumption to these consumers. I think it goes a step further, too, because Defendant Realpage, despite this case and the information that was given in 2013, continues to sub meter gas utility service in the Commonwealth of Massachusetts. So I do believe that 93A provides a mechanism for not just my clients but other consumer tenants to challenge this practice, which appears to all of a sudden be a commonwealth-wide practice of foisting these utility charges, which are the financial responsibility. The regulation says supply and pay for it. They are passing these along to the tenant. Just because the tenant receives a utility service doesn't mean that they're not injured here. They're paying something that is the cost of doing business for the landlord. I'm sorry, just a word. Can I ask you about appellate jurisdiction? Yes, sir. As I understand it, there are claims not before us here about which there's some dispute about whether those claims were settled. Your Honor, there was a status report with the trial court at the time of certification and the motion for summary judgment. At that time, the parties, and I don't want to speak for my brothers, but the parties had informed the court they were working towards settling the certified settlement security deposit class. However, the parties reported that that issue was not settled. When the court dismissed on summary judgment, the parties filed a joint motion for reconsideration or clarification, I apologize, under Rule 60, and the court responded by saying this matter has been settled, so there's no need to change the judgment. However, we believe this, or the appellants believe this is an error because even had a settlement been reached on a certified class action, the trial court bears the responsibility of overseeing that settlement. So even if we had reached a private class-wide settlement, this case could not be dismissed if the junk shirt was dismissed because the court has that responsibility. But I guess, why doesn't that create an appellate jurisdiction problem if those claims are still live claims? Your Honor, I would suggest they're no longer live. What? I would suggest they're no longer live claims upon the presentment of the Rule 60 motion. At that point, the appellants are without any other option other than to file the appeal. We did approach the trial court. No, no, I understand. You could have sought a 54B certification. Correct, Your Honor, but at the time it was motioned by the parties in the Rule 60. For our purposes, that matters. If there's no 54B certification and there is a live claim below, not before us, we can't hear the case, can we? Your Honor, I would suggest that this could be considered an interlocutory matter. There are several matters that are being presented presently that are of final judgment. The remand of this case for the issue related to the security deposit subclass may still be a live issue. According to the court in its decision on the Rule 60, it is not. It is a closed case. There is nothing further the appellants or appellees can do. Yes, but if we disagree with the court on that and we say that that remains live, why is the rest of the case appropriately before us? Your Honor, I would suggest that under the rules of appellate procedure, once the court had, once the appellant here had exhausted all remedies that he believed was available to him, including that joint Rule 60 motion, there was no other way to put this case forward because for all intent and purposes, the trial court had closed the door. It closed the books. So we're here today on several matters that have reached final resolution. There is this one matter of the dismissal of the security deposit class. The court does have jurisdiction of the trial. What is your position of the status of the claims as to which the Rule 60 motion was denied? Are those still pending or are they not pending in the district court? I believe according to the district court that that case has been closed. So while I may not believe it was done, I may believe that a certified class required court oversight had there been a settlement. Because there has been no settlement, I do believe that the case has been closed. All right, so bottom line, you think that because the court made a final decision, even if it's improper, that is final for purposes of our jurisdiction, and you want us to hold that the court erroneously found that the matter had been settled and remanded back to the district court? Yes, Your Honor. One of the requests of the appellants here is with regard to the security deposit claims, that is the relief being sought. There are, as I mentioned in the beginning, a few matters that this appeal raises. The other final matter which we haven't addressed is the dismissal of Realpage, the 93A claims against the utility company who is continuing to unlawfully submit their gas utility service in Massachusetts. The court finding that there was no liability because this utility company or the sub-metering company was not a landlord under the regulation. However, I do suggest that that ignores that no primitive contract is necessary under a 93A claim, and further that a claim for 93A is separate than a claim against the landlord. The Connolly's claim in this action against the utility company is that you cannot illegally or unlawfully gas sub-meter in the Commonwealth of Massachusetts. Hard stop. And as a result of that unlawful conduct and the foisting of bills and charges upon you. But the question that I'm still stuck on, I don't quite know what I'm supposed to do about it, is that if I accept everything you just said is true, there's still the question of does that give rise to 93A liability when the actor was acting pursuant to what remains in place, which is a variance? Just, I do believe that there are two issues. So with respect to the gas sub-metering, we have a purported variance. With respect to the water and sewage sub-metering, there's no issue. I'm talking about the gas. I'm sorry, okay. So just with respect to the gas sub-metering, I do, I would suggest that 93A does allow this court... That's a state law question about which, if I'm hearing you right, there's no case addressing that type of situation. Your Honor, I do believe, to the best of my understanding, this would be an issue of first impression on that, on a purported variance that's basically valid. What should we do as a federal court with respect to the meaning of Chapter 93A in that circumstance? It seems like a fairly significant question for us to resolve as a matter of first impression. What, what, have you identified anything in state law that would support your view on that question of first impression, as opposed to the opposite view, given all of the complexities that are involved in that type of issue? Yes, Your Honor, I think that what the court can reach this question without even addressing the issue of the variance, to the extent that, regardless of the purported variance itself, and even the facial validity of it, that in 2013, when a business enterprise is told that it is doing something illegal and unlawful, and it is purposefully injuring residents, and particularly residential residents in the Commonwealth, that 93A does provide a mechanism to tell those entities that they need to stop that what they're doing. Now, with respect to the administrative process, as I said, I can't speak to that, but I do think that 93A gives broad authority to this court to tell bad actors to stop acting badly, and I do think that this court has the power. Is there anything in the record that demonstrates the injury? In other words, is there any expert testimony that billing this way overcharged the tenants? Yes, Your Honor, so there are a few things that are going on with that. So, testimony has elicited that they are not actually doing the actual usage rate. So, even in situations, for example, with water and sewer submetering, a landlord may be permitted to bill for that if they fully comply with the prerequisites, but they need to bill the actual cost. There can be no base charge, there can be nothing else, there can be no usage for common areas. However, the defendants here readily admit that they use blended charges, which are not themselves the actual usage charges. Separate and apart from that, in the fabricant matter... But how do we know that the charges are greater? I mean, presumably, if the billing actually inured to the benefit of the tenants, you wouldn't be here complaining, but how do we know that it doesn't? So, Your Honor, respectfully, I think we would still be here today. I think that the beginning of this issue is that the black letter regulation and laws say that it is the landlord's financial responsibility for these utilities. This is part and parcel of doing business, unless... And they readily admitted they didn't do the unless. So, we take the position that financially, these amounts that were charged, regardless of the receipt of the utility, these amounts that were charged illegally were actually the financial responsibility of the landlord, who was part of doing business, and therefore, I would suggest, as Justice Gants had suggested in the Kelly v. CVS case in the provides a remedy for disgorgement when an entity gains a profit or inures a benefit because of some unlawful conduct. I do think that that shows an injury here. I also believe that the blended rate shows an injury here, and the fact that they knowingly continued to voice these charges past 2013 evidences the intent of the conduct. Let me stop you there, Mr. Forrest, and ask if there are additional questions of the panel at this point. No, Your Honor. Thank you very much. Okay, you would mute your audio and video. We'll hear from Mr. Wintner, I believe. May it please the Court, Thomas Wintner on behalf of the Defendant Appellee, Roseland Residential Trust, and as indicated, I'll be splitting my time seven and a half, seven and a half, with counsel for the other Defendant Appellee, in this case, RUM or Real Page Utility Management. There are two things in the limited time that I have that I'd like to discuss, both of which I think cut through several of the issues in this case. The one is the issue of jurisdiction or lack thereof. The other is the issue of injury or lack thereof, which cuts through, in my view, all of the submetering claims, whether it's gas or water or sewer. With respect to jurisdiction, I think it's pretty clearly set forth in our motion to dismiss. There's a pretty convoluted jurisdictional history here, partly on account of the number of claims that are at issue, but simply put, there are four claims in two different buckets, one related to the so-called move-in fee, the other related to the security deposit, which simply were not resolved fully and finally by the District Court below. There is a security deposit claim that for which a class was certified. The settling that claim, as opposed to going to trial on it, they reported as much to the District Judge, but it was not in fact settled. The Rule 23e approval of the settlement never occurred because the settlement was never submitted to the court, and so those claims are left unresolved. The second bucket of unresolved claims are these so-called move-in fee claims. For those, class certification was sought but was denied. Therefore, there is simply a single one-off claim that the Conleys have with respect to that $500 charge. That doesn't amount to very much, but of course neither party moved for summary judgment nor was a dismissal sought by the plaintiffs. So those are claims that simply have not been dealt with yet. So you just want those remanded? I think well, I would love to be able to go forward and have the whole case affirmed, according to Judge Young's ruling below, but we presented this issue to Judge Young and I felt it was necessary to present it to this court because there are unresolved issues with respect to appellate jurisdiction, and there's no particular way to clean this whole thing up without having those. Either there's got to be an interlocutory appeal, which there hasn't been. Let me just understand the claims in the bucket that are the unresolved claims. There's a portion of them that you say are correct. And then you're saying there's at least one claim that's unresolved that has nothing to do with whether it was settled. It's just unresolved. That's right. In a sense, however, Judge Barron, the claims that are unresolved, the parties were on a path to settlement. No, no, no, I understand. I don't want to get into the merits of the settlement. I'm just trying to figure out, regardless of what we think about the settlement issue, you're telling us there's at least one claim that's just unresolved that has nothing to do with the settlement dispute at all. That's correct. It's a teeny-tiny claim. It is a one-off claim for $500 because class cert was denied. It applies only to the... Is that now pending before the district court? That is not pending before the district court, because my understanding is the notice of appeal stripped the district court of jurisdiction. No, no, I'm sorry, but it's unlike, if I understood your opponent, they were suggesting that the Rule 60 order from the district court amounted to a conclusion that may be erroneous, that the claims about which there was a settlement dispute were settled and therefore gone. Whether that's right or not, was there any equivalent action by the district court with respect to what we'll call the teeny-tiny claim that's still out there? Not that I'm aware of, correct? Correct. I don't see any paper that accounts for that. But your view is just on that basis alone, unless there's a Rule 54B certification, we just don't have appellate jurisdiction because there's no final judgment? Correct. Those are claims 12 and 13, and there has been no... the class certification was denied, there has been no motion for summary judgment on either side, therefore there could have been no dismissal. There was no adjudication by the court, no motion to voluntary dismissal of those claims by plaintiff? No. So, I don't see how one could resolve that absent, you know, a voluntary dismissal right now by the plaintiff's appellants. And the problem with the certified claims is I don't think they could do that since they were certified. So, I'll turn to the submetering issues. I think the motion to dismiss issue is the cleanest way to look at this is simply to look at the injury situation, or as the case here is, is no injury. So, it doesn't matter whether we're talking about gas submetering, which gets you into this kind of administrative morass of what's the effect of this 2013 memorandum that, just to be clear, did not go to Roseland. A good question was asked during appellant's time. That was a memorandum sent to local boards of health, and subsequent to issue... we don't the copy of that memorandum. Counsel is correct. It came from one of Roseland's land-use attorneys, but there was never any subsequent follow-up, either from the state or from the local board of health, with respect to two variances that had been obtained. One was obtained by the Revere property in 2005. The other was obtained by Malden earlier in the year, in 2013. So, there was no formal notice from any state, local, or other administrative body to our client with respect to those. With respect to this point, before you get to the injury point, which I know is what you want to get to, how does the factual scenario you just described relate to the state law question of whether there can be Chapter 93A liability? So, in other words, let's take as true that ultimately, under state law, plaintiff is right, the variance is illegal. Nonetheless, variance at present has been granted by a local authority. Roseland's operating under it. DPH has not passed Roseland itself, nor against the board that granted the variance. Taking all those assumptions, what is your view about how I'm supposed to think about whether there can be Chapter 93A liability in such a circumstance? Here's the way I would look at it. Normally, with these sorts of landlord- tenant issues, the way either there, if there's not an internal remedy that the respect to gas sub-metering in this case, you typically need to have some way to get yourself into the 93A arena. That's usually done through Attorney General regulations, some of which are very specific. For example, there are Attorney General regulations promulgated pursuant to Chapter 93A that speak directly to certain violations of, for example, the security deposit statute. All sorts of things with respect to the security deposit statute are baked in as effectively per, say, Chapter 93A violations. That could be an avenue that doesn't exist with respect to either gas sub-metering or water sewer sub-metering. Then you have to get in the generic way, which is some otherwise deceptive practice. I don't see any evidence. Certainly, the record doesn't suggest that there's any evidence of deception here. You'd have to get in through that other way. You'd have to have some suggestion that there was some deception going on. I think on the facts, it's kind of hard to imagine that. Unfairness is the other word. Yes, unfairness. What's your answer to the argument that the unfairness is continuing to abide, to operate pursuant to a variance that has very strong reason to believe is an unlawful variance? That's what I guess would be the best formulation. Yeah, that's a little confusing to me. I don't know how it's unfair to operate pursuant to a variance that you actually sought, where you were sort of an open book. You said, here's the way we're going to construct this building. We know it's not allowed. However, the whole purpose of a variance is to do that, which you cannot do. The local board tells you that you can do it. I got it. You go from the point of the injury. I would like to follow up on that briefly. I keep thinking about the statute doesn't apply to other conduct that is permitted under laws administered pursuant to the United States or the Commonwealth. You'd be able to show that you had the variance, but the statute also says that the burden is on the party claiming the exemption. If you've got a variance from the local regulator and you have a document in the record from the state official saying that it's illegal, how can you meet your burden? The way in which we would meet our burden in that instance, Chief Judge Howard, would be through, in my view, the regulations with respect to variances themselves. There's a specific, this is 410.840, 105 CMR. You can get a variance for any number of things other than about 10 or 12 things that affect the absolute ability of somebody to live in a house. You have to provide heat. You have to provide hot water. You have to provide garbage disposal. Anything else is fair game for a variance. Once you get the variance, there is a procedure and a process. I would argue with this notion that there isn't due process that needs to be followed for revoking that variance. Despite the fact that there was a letter that went to the boards, the local boards, no one ever acted on that letter. Let me ask you this then, counsel. In your answer to Judge Barron when you said you'd be relying on the variance, did you have in mind this Section 3 exemption or is there some other theory that you would be espousing that the 93A unfairness provisions in the circumstances here would not apply? Not that there's an exemption, but that it just wouldn't be a finding of unfairness. I didn't mean to tunnel you into the exemption. To be fair, I'm not sure I did have in mind the Section 3 side of it. I was thinking simply principles of essentially reliance. To the extent that you have this variance, you're entitled to rely on it unless it is revoked pursuant to the regulatory procedures that are set forth in the Massachusetts regulations. Why don't we stop there? Judge Thompson, you had a question. I'm trying to figure out under this sub-metering how a tenant's rights to appeal are protected. Ordinarily, if there's a disagreement about the bill that comes directly from a utility company, there are certain regulations which protect those appellate rights. How does that happen here? I mean, isn't the tenant here effectively deprived of that right? Well, I'm not sure the way in which for any individual tenant, to the extent there's a dispute over how much they were charged, they would normally take that up in the first instance either with the utility or in the sub-metering cases with the landlord. The whole point of this case, and this gets to my point about no injury, is that neither the class plaintiffs in this instance nor any other resident at Roseland Properties ever complained about how much they were being billed and whether there was an improper amount that they were being billed. In fact, at their depositions, they said the opposite. They said, yeah, we got heat, we got water, and we were billed fairly for that. Suppose a tenant wanted to challenge the sub-metering process for billing, and they thought, you know, well, I now found out you're doing sub-metering, I see that's illegal, and I think the result of the sub-metering, given how little I use utilities, I'm away all the time, I'm going to challenge it. How would that challenge be brought under state law? Well, I'm not sure many more challenges would ever be brought under the gas sub-metering, because subsequent to 2013, my understanding is that no landlords are doing that. But imagine a landlord does it, I'd find out about it. What is my recourse under state law to challenge it? I would think that there, under state law, to challenge the actual amount, I'm not sure. I think there could, there  could be a way to challenge it. If there is before the DPU or something, then I would imagine the way it would work is presumably the defendant in that administrative proceeding would invoke the variance as a defense, and then that would produce a state law resolution of whether that is a good defense. But it would matter whether there's, if there's no recourse for doing that, that may matter. If there is recourse, that would seem to contribute to your argument that there was nothing particularly unfair about the landlord operating the way it did. Yeah, I am not a hundred percent, in the case of sub-metering, since you do have the landlord, at least in the case of water sewer, taking over that, you know, but it's statutorily allowed. I don't know if there is a separate state administrative process. I think that on an individual basis, you still can make a challenge to sub-metering under either the way the plaintiffs have done it this way, or sometimes under some of the other statutes, such as quiet enjoyment or warranty of habitability. The big problem is, irrespective of how you do that, you need to make the case. And this comes, goes all the way back to Justice Fabrikant's decision from a case called Freeman versus MIT. You need to make the case that what you have been charged is actually unfair or improper, or more than you would have been charged, had essentially the utility been baked into the rent. And our point, and the record is very clear on this point, is that that was never done by the plaintiffs. They didn't even try with an expert. They didn't try to build a record for what that damage would be. Therefore, there's no injury in this case, and pursuant to this court's case, you know, Chalice and its progeny, and all of the cases that were discussed in this court's 2017 Chalice case, without any economic injury, without any showing of harm, you can't have a 93A injury. You can't even have statutory damages of $25. Other questions from the court? Just one last one. So you're saying that being deprived of any appellant rights to challenge, in and of itself, does not constitute injury? To the extent there are, I don't believe we've resolved whether there are any rights, because there might be a separate avenue that hasn't been briefed, whereby they could do that. But I don't believe that that, in and of itself, would constitute... They do make that allegation in their brief. Well, I don't, it's not, I'm not aware of any procedure that they could necessarily avail themselves of, but I also think that Mr. Forrest admitted that he hadn't actually looked into whether there would be a separate administrative regime they could look into. I just, to try to add one question, if you're 54B, if your appellant jurisdiction point is correct, what do you think we should do? And let me ask it this way. If we disagreed with you about the appellant jurisdiction argument, if it rested solely on the claims that are in that settlement bucket, in other words, we thought the Rule 60 ruling by the district court suffices to give us a final judgment as to them, such that there's appellant jurisdiction. But we agreed with you about what you call the teeny tiny claims not having been resolved. What are we supposed to do at this stage? Can we hold it in abeyance for voluntary dismissal on that one thing, for a certification in light of that? What are our options here, in your view? It's an interesting question. I suppose you could hold it into, in abeyance with instructions, and I don't know if this is allowed, with instructions for the district court and the parties to clean up those remaining claims, which would require, which might take a little time because there would need to be an approval of the class settlement and also a cleanup of this one-off claim. Alternatively, I suppose you could rule on the issue and send it back with instructions to clean up those two issues. I don't know what's appropriate, quite honestly, from an appellate procedure. Thank you, Mr. Wintner. Mr. Singh?  I don't hear you yet. Mr. Singh, could we check your microphone? Can you just introduce yourself? Yeah, I'm afraid we can't hear you. Thank you. I think he's going to try and get headphones. Can you test those, Mr. Singh? Yes, I am. Can the court hear me now? Yes. Okay. I apologize. This morning during the test run, my audio worked fine. So, of course, when things go live, this is what happens. I appreciate the court's indulgence. If I may, Judge, could I ask him to introduce himself on the record at this time? Indeed. Good morning. May it please the court. My name is Jay Singh on behalf of Respondent Apelli Rumm. Going to the merits of the sub-metering claims and taking a step back, plaintiff's appeal should be considered in light of deliberate tactical choices plaintiffs made to seek certification of the largest class of tenants that they could get for the most amount of damages under a full recovery model. They pled their case this way, and that impacted the motion to dismiss ruling, and they offered proof this way that impacted the motion for summary judgment. At the motion to dismiss stage, the district court correctly held that plaintiff's Chapter 93A claims as alleged in the operative complaint were subject to dismissal against Rumm because they were based entirely on predicate violations of state regulations and statute that as a matter of law do not apply to Rumm because it's neither a landlord nor an owner as defined by the regulation or statute itself. On the Rule 12b6 motion, allegations of the complaint control and here plaintiff's amended complaint did not have account for a freestanding violation of Chapter 93A for unfair or deceptive practices. Plaintiffs never alleged any unfair and deceptive practice against Rumm that was separate and distinct from the alleged violations of the underlying regulations and statute involving sub-metering. And under Higham v. Homeaway, which is cited in our brief, as affirmed by this court, a Chapter 93A claim based upon regulatory violations fails to state a claim where the defendant is not subject to those predicate regulations or statute that give rise to the violation. Plaintiffs are impermissibly now for the first time on appeal alleging grounds for a standalone Chapter 93A claim that was never alleged below. And again, it was a tactical decision that they made in terms of how they wanted to plead their case. I'd like to address one thing. In the reply brief, there is a reference to the Clinton Millworks case. And that case, for reasons I can explain, are both procedurally and factually distinguishable and shouldn't control here, doesn't apply to this case. Moving on to the motion for summary judgment, under the Cleveland and Celotex line of authority, the District Court correctly granted Rumm's motion for summary judgment as to the negligent misrepresentation claims because plaintiffs failed to submit admissible evidence sufficient to create a genuine issue of material fact that they suffered a pecuniary loss. And, a point that's been raised in terms of plaintiffs' failure to put forth evidence establishing a legally cognizable injury for purposes of both the Chapter 93A claims, but also a much narrower showing that they had to make with regard to economic harm in the form of pecuniary loss as it related to the negligent misrepresentation claims. Given that the District Court had found that plaintiffs had failed to meet their burden on summary judgment to submit admissible evidence sufficient to create a genuine dispute as to whether they suffered that cognizable legal injury under Chapter 93A, the same held true for the negligent misrepresentation claims. Again, a narrower, more specific type of injury that has to be shown in form of pecuniary loss. Could you address, I mean, you're operating the sub-metering, is that correct, your client? Your Honor, operating sub-metering, we are doing the calculations, yes, we're doing the billing based on the sub-metering. So, if the tenant thought that they were being over-billed, what, is there an administrative process in place? There, I don't know if there is an administrative process in place, but there is recourse that the tenant has. I mean, I think in the first instance, the tenant would take it up with either the landlord or the utility biller. Secondly, I believe from the administrative context, there's probably local agencies where a tenant could bring up a claim. I thought you were the utility biller. We are, Your Honor.  The tenant would take it up with you directly? The tenant could take it up with us directly, yes. I mean, it is possible that the tenant could raise it with the utility biller. It has happened before where if tenants have questions with regard to their utility bill, they take it up with the utility biller. They can also take it up with, what usually happens is they take it up on the first instance with the apartment community where they live. Their interaction is generally with the management office, so it's the landlord. But beyond that, Your Honor, yes, they could take it up directly with the utility biller. They could always bring a small claims action as well. I mean, if they really feel like they were unfairly charged, they have the basis to bring a small claim. You're on mute, Judge Barron. There, let's just play out that dispute because it'll help me understand what's going on. Suppose they come to you and they say, well, I'm being charged too much and the reason has to do with the submetering. If you weren't submetering, I wouldn't be charged as much as I'm being charged. And you don't deny in theory that could happen in some instance, right? In theory, it could happen. Okay, so then they bring that to your attention and you say back, well, we have a variant, so you're allowed to do submetering, so there's no problem. They say, well, no, that's illegal. You're not supposed to be doing it. What then would happen? What suit could they bring? I think if that were the case, again, I don't know what would stop them from bringing a small claims action, arguing that they're being unfairly charged for utilities. Well, a small claims court doesn't have declaratory judgment jurisdiction. It's breach of contract. Yeah, I think that the... Would it be a breach of contract claim? Is that the idea that they have to bring it as a breach of contract claim? The reason this might matter is it may illuminate whether you can bring it as a Chapter 93A claim. I understand. And I think potentially if you felt like that you were being charged in an illegal way, arguably that's a breach of the lease. And so you could bring it as a breach of contract claim. That was not brought here, but you could have. Okay, but now generally can't breach of contract claims be brought as Chapter 93A claims in some circumstances? Perhaps in some circumstances, but again... So then the question is, what is such a circumstance? Is such a circumstance the one in which the one allegedly breaching the contract, if we were to conclude, in fact, it's a breach, is doing so pursuant to a claim that they had the authority to do it under a variance. When that variance was granted at a time that they were relying on it, when they had noticed that the agency in charge of the state law treated that variance as unlawful, why wouldn't there be some argument that to continue to breach the contract in those circumstances is the kind of unfairness that Chapter 93A recognizes? Well, I think a few things. One, I don't know that necessarily here there was a breach of contract. I think that's the main point, that specifically the lease disclosed exactly the of submetering and for water and sewer. And that's exactly... Does that suggest that they would have to plead the Chapter 93A claim as a breach of contract and show that it was sort of void for public policy and all that kind of stuff in order to even get in the door on the unfairness for Chapter 93A? Is that the right way to think about it? Well, Your Honor, I think in trying to address your question as it relates here, I don't believe that they would have a basis for bringing a Chapter 93A claim for breach of contract because I don't think the contract was breached. And in fact, the testimony from both plaintiffs, the Conleys, from Alexander Conley and from Mrs. Conley... Well, does state law allow you to contract around the ban on submetering? I don't think there is a ban on submetering because a variance was obtained here, so I don't know that there was... I assume we disagree with you on that. In other words, if there's no variance, you can't agree. I mean, there are implied covenants in residential leases. For instance, the amount of security deposit that you can request. And if you request more, and even if the contract says you're going to pay more, that's void. So why isn't that the same for the metering, submetering? Because there was a variance, a legally obtained variance obtained that was never revoked, and specifically the statute calls out situations where no variance could ever be obtained. This is not one of those. And so you have a situation where a variance was legally obtained under the administrative process. As the district court correctly found, it was never revoked consistent with the administrative process or the method that that would be done. And the evidence in the record below shows that the tenants were charged consistent with the methodology laid out in their lease agreement as to how they would be billed. Both the Conleys testified that, yes, they were billed in accordance with their lease. So you wouldn't have a breach of contract claim that would give rise to a Chapter 93A claim. And I think the bigger question is ultimately... Let me ask you this. Since DPH sent that notice to the local boards, has submetering been permitted in the Commonwealth? I think in those instances where a variance was obtained, I think submetering... No, no, no. Since 2013, when I presume the memos hit the local boards, have they allowed submetering? I don't think there have been variances issued since then. Correct. So you want us to think of this as something like your clients are grandfathered? Well, I think the thing is this, is that we're looking at this for purposes of a Chapter 93A claim. And the other one is the negligent misrepresentation claim. And I think for is that with regard to the gas submetering, it was being billed in accordance with a legally obtained variance. Let me just ask you, suppose instead of DPH issuing a memo saying that the variances are illegal, the state legislature passed a statute saying those variances are illegal. Did the case come out the same or different as this one? I think the case, well, it depends if you have retroactive application of the statute. And there are questions... That's just as unclear on that as the reg is. I think if you had an actual statute on the books, and I would hope that the legislator would give some clarity as to the application of that statute in terms of timing and so forth. And is that then the reason because you think essentially what you're saying is it wasn't unfair to do it because it was somewhat reasonable for you to believe the variance was lawful, not withstanding the DPH memo? Is that the idea? Well... Trying to figure out whether it's a... Do you have a vested right or a retroactive thing until it's revoked? Or is the idea that, no, we still think it's legal. It's perfectly fine to grant these variances. If I sought one today, it would be lawful to grant it to me. So a few things. I think on the point on notice, there's actually no evidence in the record that RUM had notice of the DPH memo until 2018 when it received the Chapter 93A letter. That was the first time that RUM became aware of this DPH memo because as council pointed out, it was sent to the local boards. It wasn't sent out to utility billers or anything like that. They obtained it through their local lawyer. And in fact, there aren't any communications in the record between RUM and Roseland. It was referenced by council, but there aren't any communications between RUM and Roseland that put it on notice of this DPH memo. To your question, Your Honor, I think that for purposes of what RUM relied on, it relied on the fact that Roseland had a variance. Not knowing about the DPH memo. I got it. All right. Thank you, Mr. Singh. Thank you, Your Honor. We'll have to pause there. That concludes argument in this case. Attorney Forrest, Attorney Wintner, and Attorney Singh, you should disconnect from the hearing at this time.